GEO. D. SISSON, FRANCIS LILLEY, HARVEY C. TAFT AND JNO. VERCADE v. EDWIN R. HOLCOMB AND WM. S. MOORE.

### *Builder's lien.*

A builder's lien will not attach to any interest in real estate which defendant did not have when materials began to be furnished (How. Stat. § 8377) ; nor will filing notice of the lien operate retrospectively : the lien will not, as against bona fide purchasers, attach to property that has been transferred to them before the filing of notice.

Appeal from Kent.    (Montgomery, J.)    Nov. 18.—Jan. 6.

BILL to enforce lien.    Complainants appeal.    Affirmed.

*Birney Hoyt* for complainants.    A builder's lien may be good where title is obtained after the building began : *Mountain City Market House v. Kearns* 103 Penn. St. 403 ; *Bell*

*v. Cooper* 26 Miss. 650 ; *Rollin v. Cross* 45 N. Y. 766 ; the lien relates back to delivery of material if notice of the intent to claim it was filed : *Dunklee v. Crane* 103 Mass. 470 ; *Gale v. Blaikie* 126 Mass. 274 ; *Morse v. Dole* 73 Me. 351 ; *Goble v. Gale* 7 Blackf. 218 ; *Chadbourn v. Williams* 71 N. C. 444 ; unless otherwise provided by statute : *Cotton v. Holden* 1 McArthur 463 ; *Ritchey v. Risley* 3 Or. 184 ; *In re Hoyt* 3 Biss. 436 ; purchasers subsequent to the beginning of building must take notice of the rights of those who furnish materials : *Reading v. Hopson* 90 Penn. St. 497 ; *Miller v. Kauffman* 14 Md. 173 ; *Mellor v. Valentine* 3 Col. 258.

*Stuart & Sweet* for defendant Moore.

CAMPBELL, C. J. This was a proceeding under the lien law, to establish a lien on a lot in Grand Rapids for lumber furnished defendant Holcomb, to be used in a house to be built on that lot. The building contract was made with a firm known as Bennett, Osburn & Co., and Holcomb agreed with them to furnish the lumber to be used by them The lot was owned by Edwin F. Sweet and between them there was a mere verbal understanding which never took written shape until December 27, 1883, when Sweet conveyed to Holcomb and took back a purchase-money mortgage for $1800, which included $1150 which he was to advance to help pay for the building. These papers were to be retained by Sweet to secure the completion of the work. No money was paid to Sweet, the whole purchase money being left on credit. In January, 1884, Holcomb desired to sell, and Sweet made a sale for him to defendant Moore, for $1000 over and above the mortgage, for which sum the property was to be taken with the building completed. To secure this, $338.50 was retained until adjustment, and on April 4, 1884, the whole balances were adjusted, and the business closed up. On the same day the deeds and mortgage were recorded. After the money had all been paid, and papers delivered, Sweet was first informed that complainants set up a claim for lumber furnished. On the same day complainants filed their notice of claim of lien, but this was done after the other papers were recorded.

Upon all the facts it is very doubtful whether complainants would have had any claim had Holcomb made no sale. Their contract is shown to have been made on or before December 1, 1883, and lumber was then furnished, and we are not satisfied that it was made upon any reliance but Holcomb's personal obligation. No reference was made to the lot by any description which could identify it. But at that time Holcomb had no right, either at law or in equity, to the land. There was, at most, a vague verbal understanding which at that time was not partly performed to any such extent as would create an equitable title. It was not until December 27 that anything definite existed, and at that time the larger part of the lumber had been furnished. The statute only gives a lien upon such interest as the owner had when materials began to be furnished. How. Stat. § 8377.

But there is a more serious difficulty. By section 8378 it is provided that no lien shall attach unless the claimant shall file a written notice of the claim under his contract, which may be for what is to be furnished as well as what is already furnished ; and a copy of this notice is to be served on the parties interested in the land. The filing and service (it is provided by § 8379) shall not bind the landowners or parties interested in the land beyond the sum then due or to become due thereafter ; and of such amounts notice and proofs must be given, as required by § 8380. And it is declared by § 8379 that the indexing and filing of the notice of intention to claim a lien " shall have the same effect as to notice as the recording of a mortgage."

It is impossible under this statute to hold that the Legislature meant to so far deviate from the long-settled policy of the laws as to allow the title to real estate to be hampered and clouded by claims of which no one has means of knowledge. The fair meaning of § 8378 is that until the proper notice is filed no lien shall attach to the land. Otherwise it would be open to the unreasonable construction that a lien might exist in the mere intention of the contractor, although remaining dormant and unheard of, and that on the last day allowed for filing the notice it could be filed and given retro-

active effect in fraud of all intermediate claimants. This is not a natural construction. It is definitely destroyed by the clause declaring the effect of the record. It is thereby put on the same footing as the recording of a mortgage, and under the recording laws, such a record could not affect previously vested rights obtained in good faith without notice of it.

Moore was clearly shown to be a bona fide purchaser, without notice, of the fee-simple of the land, and the lien as to him is void. The court below took this view of the matter and rightly dismissed the proceedings with costs.

The decree must be affirmed, with costs of this Court.

The other Justices concurred.